UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS AVERY STAPLE,

       Petitioner,                             Civil Action No. 2:07-cv-12542

v.                                      Honorable Denise Page Hood

SHIRLEE HARRY,

       Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR A
WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A
CERTIFICATE OF APPEALABILITY BUT GRANTING PERMISSION FOR AN
APPLICATION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

I.    Introduction

      This is a habeas case filed by a state prisoner under 28 U.S.C. § 2254.  Michigan

prisoner Marcus Avery Staple is incarcerated by the Michigan Department of

Corrections, currently housed at the Muskegon Correctional Facility in Muskegon,

Michigan, where he is serving a life sentence for first-degree murder.[1]  Staple was

convicted following a jury trial in the Circuit Court in Wayne County, Michigan in 2000.

He was sentenced on October 18, 2000.

      On June 14, 2007, Staple filed this habeas petition, proceeding *pro se*, alleging

that he is unconstitutionally incarcerated because trial counsel was ineffective, the trial

court erred in instructing the jury, the prosecutor committed misconduct, and the

---

[1]Staple also was convicted of second-degree murder, felony firearm, and armed
robbery.  The trial court vacated the armed-robbery conviction, and the Michigan Court
of Appeals affirmed Staple's first-degree-murder and felony-firearm convictions but
vacated the second-degree-murder conviction.  See *People v. Staple*, No. 231239,
2002 WL 31082142, at*1 (Mich. Ct. App. Sept. 17, 2002).  Staple has completed his
two-year mandatory sentence for felony firearm.

cumulative effect of the trial errors deprived him of a fair trial.  Respondent filed an answer to the petition arguing that the petition should be denied because Staple's claims are either non-cognizable, procedurally defaulted, or lack merit.

Having reviewed the petition, the Court will deny it and will decline to issue Staple a certificate of appealability but will grant him permission for an application for leave to proceed *in forma pauperis* on appeal, should he chose to appeal the Court's resolution of his claims.

II.   Background

Staple's conviction arises because of the shooting death of Eddie Robinson on January 28, 2000, in Redford, Michigan.  Robinson was the victim of a robbery at his place of employment.

The prosecutor's theory was that this was a breaking and entering that went bad. The prosecutor alleged that Robinson and Staple struggled over the gun and that two shots were discharged hitting Robinson in the head.  The prosecution argued that Staple acted with premeditation and deliberation when he fired a third shot at Robinson, which entered his chest.  The prosecution alleged that Staple took Robinson's wallet and car keys.  The defense's theory was that all three shots were discharged during the struggle over the gun and that, at most, Staple was guilty of involuntary manslaughter.

The medical examiner Dr. Kanu Virani testified that Robinson had wounds to the left side of his head, left cheek, and left side of his chest.  He said the path of the wounds to the head and cheek were upward and to the left.  The path of the wound to the chest was right, downward, and to the back.  Dr. Virani said there was no evidence of close-range firing.  The cause of death was the gunshot wound to the chest.

2

The Michigan State Police Crime Lab performed DNA testing on a sweater and determined that the blood on the sweater matched the DNA profile of Staple.

Officer Adam Pasciak testified that he interviewed Staple and, after reading him his *Miranda*[2] rights, he made the following statement:

> I was going to the store to get beer.  While walking I seen (sic) a lot of police cars by Five Mile, but before I got to where the police was (sic), they left as I approached.
>
> So I was trying to see what went down and was approached by a man at the door who started saying things, who pulled a gun on me, and I was trying to protect myself.
>
> Somehow a shot goes off, and the gun fall to the floor.  I picked it up and ran.

Trial Tr. vol. III, 64 Sept. 28, 2000, ECF No. 23-7.

Staple gave additional information, including his place of employment and residence at the Tel-96 motel, that he had been drinking vodka, brandy, and beer on the night of his arrest, that he left the motel to go to the store, and that he saw some police officers.  He said he did not know how many times the gun was fired.  Staple's only statement was to Officer Pasciak.  He did not testify at trial.

The defense requested instructions on involuntary manslaughter, intoxication, and accident.  The trial judge agreed to instruct on manslaughter and intoxication but denied the request for the accident instruction, finding that, looking at the evidence in the light most favorable to Staple, the evidence did not support such an instruction; Staple told the police officer that he was struggling with the deceased and that the gun was discharged during the struggle.  The trial judge found that that fell outside the

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1996).

3

scope of an accident and fell "into the category of involuntary manslaughter and possibly gross negligence."  Trial Tr. vol. III, 104, ECF No. 23-7.

The jury convicted Staple of second-degree murder, felony murder, armed robbery, and felony firearm.  He was sentenced to life for the felony-murder conviction, forty-five to ninety years for the second-degree-murder conviction, plus the mandatory two years for the felony-firearm conviction.  The trial court vacated the armed-robbery conviction.

Following his convictions and sentences, Staple file a direct appeal with the Michigan Court of Appeals, raising claims concerning the effectiveness of trial counsel, trial-court error in not instructing on the defense of accident, prosecutorial misconduct in failing to release a recorded copy of the videotape, and double jeopardy.  The Court of Appeals affirmed his convictions and sentences for first-degree murder and felony firearm but vacated the conviction and sentence for second-degree murder.  *People v. Staple*, No. 231239, 2002 WL 31082142, at *1, *3 (Mich. Ct. App. Sept. 17, 2002).  Staple then filed a delayed application for leave to appeal that decision with the Michigan Supreme Court, which was denied.  *People v. Staple*, 468 Mich. 875, 659 N.W.2d 237 (2003).

In August 2003, Staple filed a motion for relief form judgment with the state trial court, raising claims concerning prosecutorial misconduct and the effectiveness of trial counsel.  The trial court denied the motion.  *People v. Staple*, No. 00-2628 (3rd Cir. Ct. Wayne Cnty. Sept. 21, 2004).  The state appellate courts denied his applications for

4

leave to appeal that decision.  *People v. Staple*, No. 264115 (Mich. Ct. App. Mar. 16, 2006); *People v. Staple*, 477 Mich. 907, 722 N.W.2d 815 (2006).

Staple subsequently filed a habeas petition with this Court.  The case was stayed on January 29, 2009.  *Staple v. Harry*, No. 07-cv-12542, 2009 WL 233855 (E.D. Mich. Jan. 29, 2009).

Staple then attempted to file a second motion for relief from judgment with the state trial court but it was denied because in Michigan, "a defendant may seek relief from one judgment only."  *People v. Staple*, No. 00-002628 (3rd Cir. Ct. Wayne Ctny. May 27, 2009).  The state appellate courts denied his applications for leave to appeal "because the defendant's motion for relief from judgment is prohibited by MCR 6.502(G)."  *People v. Staple*, No. 293449 (Mich Ct. App. Aug. 28, 2009); *People v. Staple*, 485 Mich. 1126, 780 N.W.2d 263 (2010).

Staple then filed his amended petition on May 26, 2010.  The case was re-opened on August 24, 2010.  *Staple v. Ladler*, No. 07-cv-12542, 2010 WL 3341530 (E.D. Mich. Aug. 24, 2010).  Staple's case is now ripe for consideration.

III.   Standard of Review

Staple's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved an

5

> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 1519 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. at 1521. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411, 120 S.Ct. at 1522.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S.Ct. 1029, 1041 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. ----, ----, 130 S.Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7, 117 S.Ct. 2059, 2067 n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24,

6

123 S.Ct. 357, 360 (2002) ( per curiam )).  "A state court's determination that a claim

lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'

on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. ---, ---,

131 S.Ct. 770, 786 (2011) (citation omitted).  The Supreme Court has emphasized that

"[i]t bears repeating that even a strong case for relief does not mean the state court's

contrary conclusion was unreasonable."  *Id.*, 131 S.Ct. at 786 (citation omitted); *see*

*also Cullen v. Pinholster*, 563 U.S. ---, ---, 131 S.Ct. 1388, 1398 (2011) (holding that the

standard is a difficult-to-meet and highly-deferential standard for evaluating state-court

rulings) (citations omitted).  Indeed, "[s]ection 2254(d) reflects the view that habeas

corpus is a 'guard against extreme malfunctions in the state criminal justice systems,'

not a substitute for ordinary error correction through appeal."  *Harrington*, 131 S.Ct. at

786 (citation omitted).  Therefore, in order to obtain habeas relief in federal court, a

state prisoner is required to show that the state court's rejection of his claim "was so

lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement."  *Id.*, 131 S.Ct. at

786-87.

IV.   Discussion

A.   No ineffective-assistance-of-counsel claims

In his first habeas claim, Staple argues that he was denied the effective

assistance of counsel when counsel failed to use peremptory challenges to remove two

jurors from the panel when those jurors had revealed prejudicial information during *voir*

*dire*.  Specifically, he claims that the jurors should have been dismissed because one

juror, Leonard Martinez, had friends who were police officers, and other juror, Dykema

7

Lyons's brother had been a victim of a robbery.  Respondent argues that this claim

lacks merit.  In his fourth habeas claim, Staple also argues that counsel was ineffective

for failing to (1) secure a second 911 tape, (2) interview a witness, (3) secure the

victim's clothing to determine close-range firing and present a defense, (4) secure an

expert witness, and (5) object to the prosecutor's closing argument.  Respondent

argues that these claims are procedurally defaulted.  The Court addresses claims one

and four together.

        1.    Claim I--Peremptory challenges

First, "peremptory challenges are not constitutionally protected fundamental

rights; rather, they are but one state-created means to the constitutional end of an

impartial jury and a fair trial." *Georgia v. McCollum*, 505 U.S. 42, 57, 112 S.Ct. 2348,

2358 (1992).  "The right to a peremptory challenge may be withheld altogether without

impairing the constitutional guarantee of an impartial jury and a fair trial." *Id.* (citations

omitted).  To the extent that Staple alleges a violation of the Michigan Constitution or

law, such allegations are non-cognizable on federal-habeas review.  A federal-habeas

court may only grant habeas relief to a petitioner "in custody in violation of the

Constitution or laws or treaties of the Untied States."  28 U.S.C. §§ 2241(c)(3), 2254(a).

Habeas relief may not be based upon perceived error of state law.  *Estelle v. McGuire*,

502 U.S. 62, 67-68, 112 S.Ct. 475, 480 (1991).  In this regard, Staple has failed to show

a violation of his federal constitutional rights.


Second, to the extent that Staple argues that trial counsel was ineffective for

failing to properly challenge the jurors, his claim also fails.

8

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [ ] by the Sixth Amendment."  *Id.* at 687, 104 S.Ct. at 2064.  Second, a petitioner must show that counsel's deficient performance prejudiced him or her.  To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694, 104 S.Ct. at 2068.  A court's review of counsel's performance must be "highly deferential."  *Id.* at 689, 104 S.Ct. at 2065.

The Supreme Court has confirmed that a federal court's consideration of ineffective-assistance-of-counsel claims arising from state-criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance.  "The standards created by *Strickland* and [section] 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Harrington*, 131 S.Ct. at 788 (internal and end citations omitted).  "When [section] 2254(d) applies, the question is not whether counsel's actions were

reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.  *Id.*

The Michigan Court of Appeals in addressing, and denying, this claim, stated:

9

Defendant claims that his attorney should have used peremptory challenges to remove one juror who had police officers as friends and another juror whose brother and a close friend had been victims of a robbery. However, the decision whether to exercise a peremptory challenge is a matter of trial strategy. The record in the instant case reveals that counsel exercised peremptory challenges to dismiss other jurors who knew either a police officer or a crime victim. Because a factual record in connection with defendant's ineffective assistance claim was not made, counsel's reasons for deciding not to use peremptory challenges to dismiss the two jurors in question are not known, and it is not apparent from the record that counsel lacked sound strategic reasons for retaining those jurors. We note that the jurors were asked whether they would automatically find a police officer more credible than other witnesses, and none responded affirmatively. Additionally, the juror whose friend and relative were both robbery victims indicated that these experiences would not influence her decision and that she could decide the case strictly on the basis of the evidence presented at trial. There is simply no evidence that the jurors in question were biased against defendant, [], and defendant has not sustained his burden of proving ineffective assistance of counsel.

*Staple*, 2002 WL 31082142, at*1 (citations omitted).

The Court agrees with the Court of Appeals's decision and finds that, though not explicitly citing *Strickland*, it did not unreasonably apply the standard. Rather, the record in this case does not support Staple's contention.

During the jury-selection process, defense counsel peremptorily excused certain jurors. Some of those excused were relatives or acquaintances of police officers and some of the jurors excused were crime victims. Others were neither related to nor crime victims. Defense counsel evaluated the individual jurors, the panel as a whole, and determined whether to excuse a particular juror. Because a juror is an acquaintance of a police office or a victim of a crime does not require that counsel excuse that juror. The record demonstrates that defense counsel actively engaged in the jury-selection process; he questioned the jurors with respect to the relevant matters

in the case and excused those whom he did not wish to determine Staple's fate.

The Court of Appeals correctly determined that exercising peremptory challenges is a matter of trial strategy, and that it is not apparent from the record that counsel lacked strategic reasons for keeping jurors Martinez and Lyons. Further, the jurors were asked whether they would find a police officer more credible than other witnesses and none responded that they would. And, juror Lyons indicated to the court that she could put the experiences of her brother and friend aside, listen to the evidence presented, and reach a decision on that evidence.

With that, the Court finds that Staple has failed to establish the first prong of the *Strickland* standard–that counsel was deficient. Rather, the Court of Appeals correctly determined that defense counsel's conduct, in exercising peremptory challenges, was a matter of trial strategy.

Staple also cannot demonstrate that defense counsel's act or omission prejudiced him. In *Hughes v. United States*, 258 F.3d 453, 458 (6th Cir. 2001), the Sixth Circuit held that "[where a] claim of ineffective assistance of counsel is founded upon a claim that counsel failed to strike a biased juror, [Staple] must show that the juror was actually biased against him. *See also Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001) (same). Staple has failed to meet his burden. As stated, no juror responded affirmatively when asked if they would find a police officer more credible

than other witnesses, and Lyons stated that her brother's and friend's experiences would not influence her decision when looking at the evidence in Staple's case.

Contrary to Staple's assertions, the state appellate courts properly applied the

11

*Strickland* standard in his case.  His challenge to the Court of Appeals's decision under

the *Strickland* test does not reach the high threshold established by the AEDPA for the

granting of habeas relief with respect to this claim.

> 2.      Claim IV–remaining ineffective-assistance-of-counsel claims

With respect to Staple's claim regarding the 911 tape, the Court of Appeals found

that he failed to argue on appeal how getting the tapes would have assisted his

defense.  Again, though not specifically citing *Strickland* but using the standard, the

Court of Appeals denied the claim, finding that Staple failed to demonstrate prejudice.

The Court agrees.  *See* section C, *infra*.

With respect to the remaining ineffective-assistance claims, Staple did not

present those claims to the state courts until he filed his second motion for relief from

judgment.  The trial court rejected his motion under Michigan's court rule 6.502, stating

that it was precluded from entertaining a second motion for relief from judgment

because Staple had already filed a motion for relief from judgment.  *Staple*, No. 00-

002628-01.  Staple did not present to the trial court any new, reliable evidence of actual

innocence that would entitle him to file a second motion.  See MCR 6.502(G)(2)

(a defendant may file a second or subsequent motion based on a retroactive change in

law that occurred after the first motion for relief from judgment or a claim of new

evidence that was not discovered before the filing of the first motion).  The Michigan

Court of Appeals and Michigan Supreme Court likewise rejected Staple's appeal for lack

of jurisdiction because state law does not allow a defendant to appeal the denial or

rejection of a successive motion for relief from judgment.  *Staple*, No. 293449; *Staple*,

485 Mich. 1126, 780 N.W.2d 263; see MCR 6.502(G)(1) (a defendant may not appeal

the denial or rejection of a successive motion). Therefore, these claims are procedurally barred from federal-habeas review.

"[P]rocedural default results where three elements are satisfied: (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). Michigan's court rule 6.502(G), the procedural rule relied on by the state courts to deny Staple relief with respect to these claims, is an adequate and independent state ground sufficient to invoke procedural default because the rule was "firmly established and regularly followed" before he submitted his application for leave to appeal. *Porter v. Smith*, 197 F. Supp. 2d 827, 833 (E.D. Mich. 2002) (citations omitted).

Because the elements of procedural default have been satisfied, Staple must show "cause" for failing to comply with the State's procedural rule and "actual prejudice" as a result of the alleged violation of federal law. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565 (1991). Alternatively, he must demonstrate that a fundamental miscarriage of justice will occur as a result of the Court's failure to consider the substantive merits of his claim. *Id.*

Constitutionally ineffective assistance of counsel is "cause" for a procedural default. *McCleskey v. Zant*, 499 U.S. 467, 494, 111 S.Ct. 1454, 1470 (1991). However, to the extent that Staple attempts to establish cause to excuse his procedural default by

13

claiming that his appellate counsel was ineffective for failing to raise his claims in his direct appeal, he does not do so.  Nevertheless, attorney error will not constitute adequate cause to excuse a procedural default unless it amounts to constitutionally ineffective assistance of counsel under the criteria established in *Strickland*, *supra*. *Strickland*, 466 U.S. at 687.  Moreover, judicial scrutiny of counsel's performance is "highly deferential."  *Id.* at 689.  The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312 (1983).  The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the very goal of vigorous and effective advocacy [].  Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.*, at 754, 103 S.Ct. at 3314 (footnote omitted).  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, the hallmark of effective appellate advocacy is the process of "winnowing out weaker arguments on appeal and focusing on" those more likely to prevail.  *Jones*, 463 U.S. at 751-52, 103 S.Ct. at 3313. "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome."  *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (citation omitted). Appellate counsel may deliver deficient performance and prejudice a defendant by

14

omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Staple is unable to show that appellate counsel's performance fell outside the wide range of professionally competent assistance when counsel omitted the claims presented in his motion for relief from judgment. Appellate counsel presented significant claims on direct appeal. Staple has not shown that appellate counsel's strategy in presenting those claims, to the exclusion of others, was deficient or unreasonable.

Further, a claim of ineffective assistance of appellate counsel does not address Staple's failure to raise these claims in his first motion for relief from judgment. It was that omission which caused the procedural bar of his remaining claims. Therefore, any asserted misconduct of his appellate attorney could not serve as cause for his procedural default.

Staple has not alleged any other adequate reason why he did not raise these claims on direct appeal or in his first post-conviction motion. A habeas petitioner's *pro se* status and ignorance of rights at the state court level does not constitute cause which would excuse the procedural default. *Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995). Since cause has not been shown, the Court need not consider whether actual prejudice has been demonstrated. *See Smith v. Murray*, 477 U.S. 527, 533, 106 S.Ct. 2661 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).

Additionally, the Court's failure to review these claims would not be a miscarriage of justice. The narrow exception for fundamental miscarriages of justice is reserved for

15

the extraordinary case in which the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388, 124 S.Ct. 1847, 1849 (2004).  A claim of actual innocence "requires [the] petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 865 (1995).  Staple has failed to present evidence supporting a credible claim of innocence; therefore, a miscarriage of justice will not occur as a result of the Court's failure to consider the substantive merits of his claims in spite of the procedural default.

Accordingly, review of Staple's remaining ineffective-assistance claims are procedurally barred.

B.      No improper jury-instruction claim

In his second habeas claim, Staple asserts that the trial court erred by failing to instruct the jury on the defense of accident.  As an initial matter, to the extent that Staple is alleging that the trial court's failure to give the requested instruction violated Michigan law or the Michigan jury instructions, such claims are not cognizable on federal-habeas review.  *Estelle*, 502 U.S. at 71-72, 112 S.Ct. at 475 (the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief) (citation omitted). Rather, a habeas challenge to a jury instruction requires more than showing that the particular instruction is erroneous.  *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871 (1974).  In fact, he must establish that the jury charge, considered in the context of the instructions as a whole, "so infected the entire trial that the resulting

16

conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400 (1973). A challenge to a jury instruction is not to be viewed in "artificial isolation," but rather "must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72, 112 S.Ct. at 482 (citation omitted). The category of infractions that can render an entire trial fundamentally unfair is narrow. *Id.*, at 73, 112 S.Ct. at 482 (citing *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 674 (1990)). Additionally, "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 887 (1988) (citations omitted). This Staple cannot do.

The Court of Appeals addressed, and rejected, this claim, stating:

> Here, the trial court ruled that despite defense counsel's claim during closing arguments that the fatal gunshot occurred accidentally during a struggle, the evidence did not support an instruction on the defense of accident. We agree. The evidence showed that the victim had been shot three times. There was no evidence that any of the shots were fired from close range. Moreover, an expert witness testified that the trajectory of the fatal bullet indicated that it was consistent with the shooter having stood over the victim. A police officer responding to a 911 call for a possible armed robbery testified that, as he was approaching the scene of the shooting, he saw one man standing over another man who was on the floor and then saw a man fleeing the building. Additionally, defendant did not testify at trial, and his prior statements introduced at trial, which contradicted one another in several respects, did not support a logical finding by the jury that the victim was shot three times accidentally. Finally, defense counsel's reference to an "accident" in his closing argument did not provide the necessary evidentiary support to warrant an accident instruction. Because the evidence did not logically support an accident instruction, the trial court did not err in refusing to give such an instruction.

*Staple*, 2002 WL 31082142, at *2 (citation omitted).

The Court finds that the Court of Appeals's decision is neither contrary to, nor an

17

unreasonable application of, clearly established Supreme Court precedent.  The trial court properly instructed the jury on the applicable law based on the evidence presented.  Through his statements to the police, Staple posited inconsistent versions of what happened during the incident.  Because his theory rested upon his intoxication and lack of intent to commit the armed robbery or premeditated murder, the trial court instructed the jury on involuntary manslaughter and voluntary intoxication, thereby encompassing Staple's claim that the killing was not intentional.  The trial court declined to instruct on accident because Staple did not claim that the victim was shot three times because the gun discharged as a result of being dropped or some other indirect force. He did not offer an explanation as to how he could have accidentally shot the victim three times.

The Court finds that the trial court did not err in declining to instruct on an accident theory because it was unsupported by the evidence.  Again, Staple's challenge in this regard does not reach the high threshold established by the AEDPA for the granting of habeas relief with respect to this claim.

     C.    <u>No discovery-error claim</u>

In his third habeas claim, Staple argues that his rights were violated when the prosecutor failed to turn over 911 tapes prior to trial and after a request for discovery was made.  Staple relies on the Supreme Court ruling in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963) to support his position.  He attempted to raise this claim in his direct appeal but the Court of Appeals could not address it "because it is unclear what defendant is arguing; he simply makes a vague reference to a 'recorded copy of tape'

18

and to 'suppressed interview notes.'" *Staple*, 2002 WL 31082142, at *3. However, the Court of Appeals reviewed the record and found no error requiring reversal with respect to any tape recordings or interview notes. *Id.*

Setting aside any procedural default with respect to this claim–for Staple's failure to develop or make his argument–the Court finds that the claim is non-cognizable and lacks merit.

First, to the extent that Staple is arguing that the prosecutor violated state-discovery rules, he is not entitled to habeas relief. "It is well settled that there is no general constitutional right to discovery in a criminal case." *Stadler v. Curtin*, 682 F. Supp. 2d 807, 818 (E.D. Mich. 2010) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 846 (1977); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988)). A claim that a prosecutor violated state-discovery rules is not cognizable in federal-habeas review because it is not a constitutional violation. *Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002).

Second, under *Brady*, the Supreme Court has held that the prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. at 1197. In other words, to find a *Brady* violation, not only must the evidence be suppressed, but the suppressed evidence must be material and favorable to the accused. *Elmore v. Foltz*, 768 F.2d 773, 777 (6th Cir. 1985). Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the

19

proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383 (1985).

Here, Staple has failed to show that the 911 tape allegedly suppressed was favorable to him, or exculpatory, or that prejudice ensued. As the prosecutor noted at trial, defense counsel was aware of the tape and could have listened to it if he so chose to do. Accordingly, this claim was reasonably denied by the Court of Appeals. Habeas relief is not warranted.

Under these circumstances, counsel was not ineffective for requesting the tape because the tape was made available and he was aware of its availability. Staple does not begin to satisfy the demanding *Strickland* standard in this regard. As noted above, the Court of Appeals found no error with respect to this claim. Objections would have been futile. Counsel's failure to make futile objections may be viewed as a strategic decision meant to preserve his credibility, and thus cannot be challenged. *Strickland*, 466 U.S. at 690. Nor could the failure to raise futile objections have prejudiced Staple, as the result would have been the same even if they were voiced and overruled. *Id.* at 694. The evidence against Staple was overwhelming.

D.    No cumulative-error claim

In his final habeas claim, Staple alleges that the cumulative effect of the above-alleged errors denied him a fundamentally fair trial in contravention of the Due Process Clause. The Court finds this claim meritless.

First, this claim is procedurally defaulted because it was first raised in Staple's motion for relief from judgment.

Second, the Sixth Circuit has consistently and explicitly held that a habeas

20

petitioner cannot premise relief on a claim of cumulative-trial error.  *See*, e.g., *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) (the law of the is that cumulative-error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005) (discussing cumulated evidentiary errors); *see also Lorraine*, 291 F.3d at 447 (same).  Accordingly, Staple is not entitled to habeas relief with respect to his cumulative-error claim.

      E.     No certificate of appealability

Before Staple may appeal the Court's decision, a certificate of appealability must issue.  See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b)(1).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1603-04 (2000) (citation omitted).  When the court denies a petition on procedural grounds without reaching the merits of the underlying constitutional claims, a certificate of appealability should issue when the petitioner shows that jurists of reason would find it debatable whether the petition stated a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the court was correct in its ruling.  *Id.*

Upon such review, the Court concludes that Staple has failed to make a substantial showing of the denial of a constitutional right as to his claims.  A certificate

21

of appealability is not warranted.

Whereas a certificate of appealability may only be granted if Staple makes a substantial showing of the denial of a constitutional right, the Court may grant *in forma pauperis* status if it finds that an appeal is being taken in good faith. *Foster v. Ludwick*, 208 F. Supp. 2d 750, 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Id.* at 765. Although the Court finds that jurists of reason would not debate its resolution of Staple's claims, the issues are not frivolous. Therefore, an appeal could be taken in good faith and Staple will be granted permission for application for leave to proceed *in forma pauperis* on appeal. *Id.*

V.    Conclusion

For the foregoing reasons, IT IS ORDERED that the petition for a writ of habeas corpus is DENIED and the matter is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the Court will decline to issue Staple a certificate of appealability but will grant him permission for an application for leave to proceed *in forma pauperis* on appeal.


                    S/Denise Page Hood
                    Denise Page Hood
                    United States District Judge

Dated:  February 28, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 28, 2013, by electronic and/or ordinary mail.

                    S/LaShawn R. Saulsberry
                    Case Manager

22